UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| MAULDIN BRAND INC., | |
|     Plaintiff, | |
| v. | CIVIL ACTION NO. |
| BLACK PROMOTERS COLLECTIVE LLC; | _____ |
| G SQUARED EVENTS HOLDINGS LLC; | |
| GARY S. GUIDRY; and | |
| SHAD GREGORY MOSS aka "BOW WOW" | |
|     Defendants | |

## COMPLAINT

1.    Plaintiff Mauldin Brand Inc. ("Mauldin Brand"), for its Complaint against Defendants Black Promoters Collective LLC ("BPC"); G Squared Events Holdings LLC ("G Squared"); Gary S. Guidry ("Guidry"); and Shad Gregory Moss aka "Bow Wow" (collectively, "Defendants"), states as follows:

## NATURE OF THE ACTION

2.    For forty years, Mr. Michael T. Mauldin ("Mr. Mauldin") has offered a variety of products and services, including branding and management to young developing music performing artists, including his own son, Hall of Fame songwriter,

performing artist, and producer Jermaine Dupri Mauldin aka "Jermaine Dupri". In 1982, Jermaine Dupri was only 10 years old when Mr. Mauldin promoted and developed his son's music performance career. Jermaine Dupri first performed as a dancer with music performance legends, Diana Ross, Herbie Hancock, and Cameo. In 1984, Mr. Mauldin was the producer of the Original New York Fresh Festival, the first ever national, multi-act live music performance event featuring young hip hop rappers, DJs, and dancers, such as Run DMC, Whodini, and the Fat Boys, each of whom at the time were relatively unknown teenage music performers.

3.      In 1992, under the direction and advisory of Mr. Mauldin, Jermaine Dupri discovered the music performance talents of two young teens, named Chris Kelly and Chris Smith, in College Park, Georgia. Mr. Mauldin named the duo, "Kris Kross", which recorded a song called "Jump", written and produced by Jermaine Dupri. The song was the fastest climbing song recording on the charts in 20 years. Kris Kross went on to tour around the world and to sell millions of song recordings. The Kris Kross phenomenon started a new youth movement in the music industry, making Mr. Mauldin and his son Jermaine Dupri two of the most sought after promoters and developers of young talent in the industry.

4.      Based on his initial success in promoting and developing his son Jermaine Dupri's music performance career, and well as collaborating with his son to promote and develop music performance artists Kris Kross, Xscape, DaBrat, and Jagged

2

Edge, Mr. Mauldin founded his company Mauldin Brand Inc. ("Mauldin Brand") to attract, cultivate, and promote younger age performing artist talent, which is unique in the Black music industry. Mauldin Brand has developed an extensive, loyal customer base in the music industry.

5.     Mr. Mauldin coined the phrase "SCREAM TOUR" to use with live music performance events and tours, including promoting and developing younger age performing artist talent, and has subsequently built a unique following of young Black and Brown urban youth and families.

6.     In 2001, through his event promotion company Atlanta Worldwide Touring, Inc. ("AWT"), Mr. Mauldin began using the "SCREAM TOUR" phrase (the "SCREAM TOUR™ Trademark") with live music performance events and tours, and since that time, has used the SCREAM TOUR™ Trademark, through his other related companies, Scream Nation, LLC and Mauldin Brand, with a series of highly successful live music performance events and tours.

7.     Through the actions explained herein, Defendants have willfully infringed on Mauldin Brand's common-law trademark rights in the SCREAM TOUR™ Trademark in connection with goods and services similar to Mauldin Brand's, without Mauldin Brand's consent, despite being aware of Mauldin Brand's prior rights (herein, the "Infringing Goods and Services").

8.      Defendants' actions are likely to cause confusion among the trade and consuming public, thereby causing irreparable harm to Mauldin Brand. Mauldin Brand is therefore entitled to all remedies allowed by law to halt Defendants' infringement and remedy the injury such infringement has caused.

## THE PARTIES

9.      Mauldin Brand Inc. is a corporation organized and existing under the laws of the State of Georgia, having its principal place of business at 3334 Peachtree Street NE, Suite 712, Atlanta, Georgia 30326.

10.     On information and belief, Defendant Black Promoters Collective LLC is a limited liability company organized and existing under the laws of the State of Texas, having its principal place of business at 25000 Interstate 45 N, Suite 4043, The Woodlands, Texas 77386-1364.

11.     On information and belief, Defendant G Squared Events Holdings LLC, is a limited liability company organized and existing under the laws of the State of Texas, having its principal place of business at 12435 Silvermine Drive, Houston, Texas 77030.

12.     On information and belief, Defendant Gary S. Guidry is an individual residing in the State of Texas, having a principal place of business at 25000 Interstate 45 N, Suite 4043, The Woodlands, Texas 77386-1364.

13.     On information and belief, Defendant Shad Gregory Moss aka "Bow Wow" is an individual residing in the State of Georgia, having a business address at 1115 Howell Mill Road, NW, Atlanta, Georgia 30318-6285.

## JURISDICTION AND VENUE

14.     This Court has federal question jurisdiction over this Complaint by virtue of 28 U.S.C. §§ 1331 and 1338.

15.     The Court has supplemental jurisdiction over the claims arising under the laws of the State of Georgia, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

16.     This Court has personal jurisdiction over Defendants because Defendants have deliberately and intentionally marketed, sold, and rendered, or caused to be marketed, sold, and rendered, the goods and services relevant to this action to consumers within the State of Georgia.

17.     Venue is proper in this Court under 28 U.S.C. § 1391 in that Defendants are subject to personal jurisdiction in this judicial district, and a substantial part of the events giving rise to this action occurred in this judicial district.

18.     Defendants have deliberately and intentionally marketed, sold, or rendered the Infringing Goods and Services in this judicial district.

## STATEMENT OF FACTS

### Mauldin Brand's Trademarks

19.    Mr. Michael T. Mauldin ("Mr. Mauldin") is the current Chairman of the Black American Music Association, former President of Columbia Records Black Music Division, former Senior Vice President of Columbia Records Group, and is the father of Hall of Fame songwriter, performing artist, and producer Jermaine Dupri Mauldin aka "Jermaine Dupri".

20.    For forty years, Mr. Mauldin has offered a variety of products and services, including branding and management to young developing music performing artists, including his own son, Hall of Fame songwriter, performing artist, and producer Jermaine Dupri Mauldin aka "Jermaine Dupri".

21.    In 1982, Jermaine Dupri was only 10 years old when Mr. Mauldin promoted and developed his son's music performance career. Jermaine Dupri first performed as a dancer with music performance legends, Diana Ross, Herbie Hancock, and Cameo.

22.    In 1984, Mr. Mauldin was the producer of the Original New York Fresh Festival, the first ever national, multi-act live music performance event featuring young hip hop rappers, DJs, and dancers, such as Run DMC, Whodini, and the Fat Boys, each of whom at the time were relatively unknown teenage music performers.

23.    In 1992, under the direction and advisory of Mr. Mauldin, Jermaine Dupri discovered in College Park, Georgia, the music performance talents of two young teens, named Chris Kelly and Chris Smith. Mr. Mauldin named the duo, "Kris Kross", which recorded a song called "Jump", written and produced by Jermaine Dupri. The song was the fastest climbing song recording on the charts in 20 years. Kris Kross went on to tour around the world and to sell millions of song recordings. The Kris Kross phenomenon started a new youth movement in the music industry, making Mr. Mauldin and his son Jermaine Dupri two of the most sought after promoters and developers of young talent in the industry.

24.    In 1993, Mr. Mauldin helped Jermaine Dupri (his then 19-year-old son) establish the recording label, So So Def Recordings. Mr. Mauldin was instrumental in helping Jermaine Dupri and music performance artists under the recording label, So So Def Recordings, achieve worldwide acclaim.

25.    Based on his initial success in promoting and developing his son Jermaine Dupri's music performance career, and well as collaborating with his son to promote and develop other highly successful music performance artists such as Kris Kross, Xscape, DaBrat, and Jagged Edge, Mr. Mauldin founded the company Mauldin Brand Inc. ("Mauldin Brand") to attract, cultivate, and promote younger age performing artist talent, which is unique in the Black music industry. Today, Mr. Mauldin is still the Chief Executive Officer (CEO) and sole owner of Mauldin

Brand. Mauldin Brand has developed an extensive, loyal customer base in the music industry.

26.     In 2001, Mr. Mauldin coined the phrase "SCREAM TOUR" to use with live music performance events and tours, including promoting and developing younger age performing artist talent, and has subsequently built a unique following of young Black and Brown urban youth and families. Mr. Mauldin and his son Jermaine Dupri organized the first live music performance events and tour marketed under the SCREAM TOUR™ phrase (the "SCREAM TOUR™ Trademark"). The first SCREAM TOUR™ live music performance events and tour were promoted by Atlanta Worldwide Touring, Inc. ("AWT"), another company founded by and owned by Mr. Mauldin.

27.     Over the years, Mr. Mauldin has had a series of co-promoters for the SCREAM TOUR™ live music performance events and tours.  In 2006, 2007, and 2008, Mr. Mauldin and Atlantic Records promoted and co-branded the SCREAM TOUR™ live music performance events and tours under the phrase "Scream Star Entertainment". From 2008 to 2012, Mr. Mauldin and AEG Live promoted and co-branded the SCREAM TOUR™ live music performance events and tours.

28.     In 2014, Mauldin Brand entered into a joint venture agreement with Live Nation Worldwide, Inc. to organize and promote the SCREAM TOUR™ live music performance events and tours under the entity, Scream Nation, LLC, for which Mr.

Mauldin served as Chief Executive Officer (CEO). In the joint venture agreement with Live Nation Worldwide, Inc., Mauldin Brand assigned its trademark rights and goodwill in the SCREAM TOUR™ Trademark to Scream Nation, LLC, to co-brand and market the SCREAM TOUR™ live music performance events and tour collectively under the SCREAM TOUR™ Trademark, and SCREAM NATION™ and SCREAM NATION TOUR™ trademarks.

29.    In 2015, 2016, and 2017, Scream Nation, LLC organized and promoted live music performance events and tours collectively under the SCREAM TOUR™ Trademark, and the SCREAM NATION™ and SCREAM NATION TOUR™ trademarks.

30.    In 2018, Mauldin Brand and Live Nation Worldwide, Inc. mutually ended their joint venture agreement, and Scream Nation, LLC assigned its trademark rights and goodwill in the SCREAM TOUR™ Trademark, the SCREAM NATION™ and SCREAM NATION TOUR™ trademarks, and associated goodwill in each of the marks back to Mauldin Brand.

31.    After the 2017 SCREAM TOUR™ live music performance tour ended, Mauldin Brand began planning for the next SCREAM TOUR™ live music performance events and tour, and maintained its website and social media presence utilizing the SCREAM TOUR™ Trademark as well as the SCREAM NATION™ and SCREAM NATION TOUR™ trademarks.

32.    The first and subsequent SCREAM TOUR™ live music performance events and tours in 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2010, 2012, 2015, 2016, and 2017 have been highly successful in attracting, cultivating, and promoting teenage and young adult music performers in the music industry. Based on whether new, teenage and young adult music performers were ready to perform, Mr. Mauldin made decisions each year whether to conduct the SCREAM TOUR™ live music performance events and tour. Music performers including Ne-Yo, T.I., Chris Brown, Trey Songz, Ciara, T-Pain, Defendant Shad Gregory Moss aka Bow Wow, B2K, Nick Cannon, Yung Joc, Omarion, Mindless Behavior, Ms. Mulatto aka Lotto have performed at live music performance events and tours under the SCREAM TOUR™ Trademark.

33.    Mauldin Brand's SCREAM TOUR™ live music performance events and tours are unique in the Black music industry, and the industry and fans recognize Mauldin Brand's SCREAM TOUR™ live music performance events and tours for these achievements.

34.    In early 2020, the worldwide COVID-19 pandemic interrupted Mauldin Brand's planning for the next SCREAM TOUR™ live music performance events and tour. Due to the relatively high COVID-19 infection rates, numerous public health advisories were issued by the United States government against public gatherings such as live music performance events.

35.    In 2021, Mauldin Brand printed T-shirts and merchandising material for the 20th anniversary return of the SCREAM TOUR™ live music performance events and tour, however, Mauldin Brand decided that live music performance events and a tour were not yet safe for fans in view of numerous public health advisories related to the ongoing worldwide COVID-19 pandemic.

36.    In May, 2023, shortly after the United States government lifted its COVID-19 travel restrictions, Mauldin Brand hired a tour router and discussed plans for the next SCREAM TOUR™ live music performance events and tour with several entertainment and production companies. However, the Infringing Goods and Services being offered by the Defendants have sowed consumer confusion in the music industry, and have disrupted Mauldin Brand's plans for the next SCREAM TOUR™ live music performance events and tour.

37.    Since 2001, Mauldin Brand has invested extensive time, effort, and money, and absorbed commercial risk, in the course of developing its brands and line of products and services, including organizing and producing the highly successful SCREAM TOUR™ live music performance events and tours. As a result of these efforts, Mauldin Brand enjoys a substantial and loyal customer following that associates Mauldin Brand and its numerous brands including its SCREAM TOUR™ Trademark as well as the SCREAM NATION™ and SCREAM NATION TOUR™ trademarks with high quality products and services.

11

38.     Mauldin Brand has an active and well-followed website, and both Mauldin Brand's and Mr. Mauldin's social media presence help them interact with customers across the United States. Further, the SCREAM NATION™ website and social media presence also help Mauldin Brand interact with customers. True and accurate examples of Mauldin Brand's and SCREAM NATION™ websites and the social media presence of Mauldin Brand, Mr. Mauldin, and SCREAM NATION™ are attached hereto as **Exhibit A**.

39.     Consequently, the trademarks that Mauldin Brand employs including the SCREAM TOUR™ Trademark as well as the SCREAM NATION™ and SCREAM NATION TOUR™ trademarks are distinctive, enjoy a highly favorable reputation among the members of the trade and the consuming public, and have become valuable indicators of Mauldin Brand's goodwill.

40.     Mauldin Brand's trademarks include U.S. Application Serial No. 98069522 (the "Pending Application for Registration"), which was filed on July 3, 2023, with the United States Patent and Trademark Office (USPTO). A true and correct copy of the Pending Application for Registration is attached as **Exhibit B**.

41.     The Pending Application for Registration is being used in connection with the following goods and services, "Class 41: Educational and entertainment services, namely, providing speaking tours in the nature of live presentations by educational and motivational speakers; Entertainment services, namely, providing music tours

in the nature of live musical performances; Entertainment services, namely, providing music theater tours in the nature of live musical theater performances" (the "Mauldin Brand Services").

42.    When accepted for registration by the USPTO, the Pending Application for Registration will be *prima facie* evidence of its validity and conclusive evidence of Mauldin Brand's exclusive right to use the SCREAM TOUR™ Trademark in commerce in connection with the goods and services covered by the registration.

43.    Since at least as early as 2001, Mauldin Brand has established rights in and to the SCREAM TOUR™ Trademark through its continuous and substantially exclusive use in interstate commerce in connection with the goods and services identified in the Pending Application for Registration.

44.    Mauldin Brand uses and promotes the SCREAM TOUR™ Trademark in connection with the Mauldin Brand Services in a wide range of print and electronic media, including its website, social media, newsletters, and other marketing and promotional materials. Mauldin Brand also markets and promotes the SCREAM TOUR™ Trademark and Mauldin Brand Services at live music performance events and tours.

45.    Mauldin Brand has devoted substantial time, effort, and expense in promoting and selling the Mauldin Brand Services under the SCREAM TOUR™ Trademark.

As a result, Mauldin Brand has achieved significant recognition for the SCREAM TOUR™ Trademark, and Mauldin Brand's business is successful and expanding.

46.   Through Mauldin Brand's widespread and continuous use of the SCREAM TOUR™ Trademark in connection with the Mauldin Brand Services, the SCREAM TOUR™ Trademark has acquired a strong reputation and tremendous goodwill.

47.   The SCREAM TOUR™ Trademark and Mauldin Brand Services have received and continue to receive widespread, unsolicited media coverage and are featured in famous industry publications like Billboard Magazine.

48.   As a result of Mauldin Brand's widespread advertising and significant commercial success, the SCREAM TOUR™ Trademark is well recognized by consumers in the general public and in connection with the Mauldin Brand Services.

## Defendants' Infringing Acts

49.   In 2001, Defendant Shad Gregory Moss aka Bow Wow ("Moss") (then 14 years old) was an emerging young music performing artist known at that time as "Lil' Bow Wow". Based on Defendant Moss' music performing talent, Mr. Mauldin invited Defendant Moss to perform in the inaugural SCREAM TOUR™ live music performance event and tour. At that time, Mr. Mauldin believed that the SCREAM TOUR™ live music performance events and tour could help launch Defendant Moss' career and create a fan base for Defendant Moss as well as other emerging young musical performing artists.

50. In subsequent years of 2002 and 2005, Mr. Mauldin invited Defendant Moss to perform in the SCREAM TOUR™ live music performance events and tours. Defendant Moss was handsomely paid for his time performing in the inaugural SCREAM TOUR™ live music performance events and tour as well as the events and tours in 2002 and 2005.

51. During each year Defendant Moss was invited to perform in the SCREAM TOUR™ live music performance events and tours, the SCREAM TOUR™ Trademark was in continuous exclusive use to promote the Mauldin Brand Services. Since 2001, the Mauldin Brand Services have been provided to consumers on a continuous and exclusive basis. Given the close relationship as a client of Mr. Mauldin, Defendant Moss was unquestionably familiar with the SCREAM TOUR™ Trademark that Mauldin Brand uses in conjunction with live music performance events and tours.

52. Over 20 years after the first use of the SCREAM TOUR™ Trademark, in November 2021, six live music promotion and production entities and/or individuals, including Defendant Gary S. Guidry ("Guidry") and his company, G Squared Productions LLC ("G Squared") founded the entity, Black Promoters Collective LLC ("BPC"), a named co-Defendant in this Complaint. Defendant Guidry is the current CEO of both co-Defendant BPC and co-Defendant G Squared.

53.    In October 2022, Defendants BPC and Guidry promoted and produced the Millenium Tour featuring live music performance events with Defendant Moss (aka Bow Wow) and other performing artists. The Defendants' Millennium Tour promoted teenage and young adult music performers for live music performance events across the United States.

54.    Despite being familiar with Mauldin Brand's SCREAM TOUR™ Trademark, Defendant BPC filed U.S. Trademark Application Serial Nos. 98008232 and 98008192 for marks (the "Infringing Marks") identical to Mauldin Brand's SCREAM TOUR™ Trademark.

55.    Defendant BPC, which is the owner of U.S. Trademark Application Serial Nos. 98008232 and 98008192, is using, or intends to use, the Infringing Marks in connection with the following goods and services (the "Infringing Goods and Services"):

**Class 41**: Entertainment services, namely, providing information and news about live concerts, musical events, and performers via websites and social media platforms; Arranging, organizing, conducting, and hosting live musical performances; Audio and video recordings featuring live musical performances; Entertainment services in the nature of live musical performances; Entertainment services in the nature of presenting live musical performances; Entertainment services in the nature of development, creation, production and post-production

services of live musical performances; Entertainment services, namely, live and live-streamed musical performances featuring various musicians and entertainers; Entertainment services in the nature of live, televised, streamed and movie featuring musical performances and behind the scenes concert footage; Production and distribution of television shows, movies, motion picture film and radio shows featuring live musical performances; Entertainment services, namely, organizing and conducting festivals featuring a variety of musical performances; Production and distribution of television programs and web series featuring music and live performances; Entertainment services, namely, providing online non-downloadable musical sound recordings and video recordings; Entertainment services, namely, providing online streaming of audio and video content in the field of music and live performances; Entertainment services, namely, providing a website featuring non-downloadable musical performances, videos, and other multimedia content; and

     **Class 25**: Apparel, namely, shirts, t-shirts, dresses, shorts, pants, skirts, jackets, hoodies, tops, and bottoms; Headwear, namely, hats and caps; Footwear.

56.   Despite its knowledge of Mauldin Brand's SCREAM TOUR™ Trademark and in blatant disregard of Mauldin Brand's trademark rights and goodwill in the SCREAM TOUR™ Trademark, on or about May 1, 2023, Defendant BPC began using the Infringing Marks on its website at www.blackpromoterscollective.com in connection with the Infringing Goods and Services. Defendant BPC's use of the

Infringing Marks on a page accessible via the upper center browser tab of its website, labeled "Events", and in press releases circulated to the music industry are shown in **Exhibit C**.  A screenshot of the page on Defendant BPC's website is shown below.



57.    Upon information and belief, Defendant BPC also began using the Infringing Marks on its Facebook page at www.facebook.com/blackpromoterscollective on June 30, 2023, on its X aka Twitter page at www.twitter.com/blackpromoters on June 30, 2023, and on its Instagram page at www.instagram.com/blackpromoterscollective on the same date, June 30, 2023. Defendant BPC's use of the Infringing Marks on its social media pages are shown in **Exhibit D**.

58.    Further, upon information and belief, Defendant Moss also began using the Infringing Marks on his YouTube page at www.youtube.com/PrinceBowWow on July 15, 2023, on his X aka Twitter page at www.twitter.com/smoss on July 14,

2023, and on his Instagram page at www.instagram.com/shadmoss on July 18, 2023. Defendant Moss' use of the Infringing Marks on his social media pages are shown in **Exhibit E**. A screenshot of the Defendant Moss' X aka Twitter page is shown below.



59.   Mauldin Brand uses the SCREAM TOUR™ Trademark on the same social media outlets, including Facebook at www.facebook.com/screamnationus, X aka Twitter at www.twitter.com/screamnationus, YouTube page at

www.youtube.com/screamtour, and Instagram page www.instagram.com/michaelmauldin. Mauldin Brand's use of the SCREAM TOUR™ Trademark on these social media pages is shown in **Exhibit A**.

60.     On information and belief, Defendants market, offer, and sell, and/or plan to market, offer, and sell, the Infringing Goods and Services under the Infringing Marks to numerous consumers having a desire to attend and view live musical performance events and tours.

61.     According to Defendant BPC's website, it provides live musical performance events and tours. Defendant BPC's website showing use of the Infringing Marks in connection with these services is shown in **Exhibit C**.

62.     Notably, Mauldin Brand provides the Mauldin Brand Services to consumers having a desire to attend and view live musical performance events and tours. Mauldin Brand's SCREAM NATION™ website showing use of the SCREAM TOUR™ Trademark to consumers having a desire to attend and view live musical performance events is shown in **Exhibit A**.

63.     Given Mauldin Brand's emphasis on organizing and producing live musical performance events and tours, a reasonable consumer could associate Defendants' Infringing Goods and Services with Mauldin Brand and its SCREAM TOUR™ Trademark.

64.    Defendants market and sell, and/or plan to market and sell the Infringing Goods and Services through, among other channels, social media channels that Mauldin Brand also uses.

65.    Defendants are not, and have never been, affiliated with, sponsored, or licensed by Mauldin Brand to use the SCREAM TOUR™ Trademark in connection with products and services identical or similar to the Mauldin Brand Services.

66.    Defendants have never obtained permission to use or license the SCREAM TOUR™ Trademark, or any other marks or designs confusingly similar thereto, for use on or in connection with any goods or services, including the Infringing Goods and Services.

67.    Upon Mauldin Brand's discovery of Defendants' use of the Infringing Marks, Mauldin Brand sent some or all of the Defendants a cease and desist letter regarding their use of the Infringing Marks. Despite receiving notice and having prior notice, Defendants chose to continue using the Infringing Marks and pursuing the U.S. trademark applications for the Infringing Marks.

**The Harm to Mauldin Brand as a Result of Defendants' Unlawful Conduct**

68.    Mauldin Brand and Defendants provide similar, and in some cases identical, products and services to customers in identical industries.

69.    Upon information and belief, Defendants have intentionally and willfully directed its advertising, promotional, and sales efforts to the same classes of

consumers and industries as Mauldin Brand's customers in an effort to capitalize on Mauldin Brand's commercial goodwill.

70.     Further, upon information and belief, Defendants have engaged in such conduct with the knowledge that the SCREAM TOUR™ Trademark is in use by Mauldin Brand and possesses substantial commercial goodwill.

71.     Defendants' Infringing Goods and Services are similar to the products and services Mauldin Brand offers under the SCREAM TOUR™ Trademark. Thus, Defendants' use of the Infringing Marks are likely to be confusing to a substantial number of actual and potential customers, and is likely to cause them to be deceived and to erroneously assume that the parties' respective goods are in some way connected with one another.

72.     Given Defendants' cavalier attitude toward Mauldin Brand's intellectual property and given Mauldin Brand's manifestly superior rights in the SCREAM TOUR™ Trademark, Defendants put at risk and damage Mauldin Brand's reputation, goodwill, and ability to market and promote its goods and services.

73.     Defendants' unauthorized use of marks confusingly similar to the SCREAM TOUR™ Trademark has injured Mauldin Brand's interests and will continue to do so unless immediately enjoined. Specifically, Defendants have damaged and threaten to damage Mauldin Brand's rights and valuable goodwill in the SCREAM TOUR™ Trademark, and has injured and threatens to injure Mauldin Brand 's right

to use and license the SCREAM TOUR™ Trademark as the exclusive indicia of origin of Mauldin Brand's goods and services.

74.   As a result of Defendants' infringing conduct, as alleged herein, Mauldin Brand has been forced to engage its counsel of record to enforce its rights in connection with the trademark at issue, thereby costing Mauldin Brand substantial money, time, and effort to enforce its trademark rights.

## COUNT I

## Federal Unfair Competition and False Designation of Origin

## (Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

75.   Mauldin Brand repeats and realleges the allegations in Paragraphs 1 through 74 above as if fully set forth herein.

76.   Through Mauldin Brand's continuous and exclusive use of its SCREAM TOUR™ Trademark in commerce, the relevant trade and consuming public has come to identify the SCREAM TOUR™ Trademark and associated goods and services as originating with Mauldin Brand.

77.   Mauldin Brand has built a valuable business through its use of the SCREAM TOUR™ Trademark, and the goodwill associated with SCREAM TOUR™ Trademark is of great value to Mauldin Brand.

78.   Mauldin Brand has continuously used the SCREAM TOUR™ Trademark in commerce to market, sell, and distribute its goods and services since at least 2001.

79.     Defendants' infringing conduct, as described herein, constitutes use of a false designation of origin and/or a false or misleading description or representation of fact on or in connection with its goods and services. Such use is likely to cause confusion, mistake or deception as to the affiliation, connection, or association of the parties, and/or as to the origin, sponsorship or approval of their respective goods, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants' infringing conduct also constitutes an attempt to arrogate to itself the substantial goodwill that Mauldin Brand has developed in the SCREAM TOUR™ Trademark, all to the damage of Mauldin Brand.

80.     Defendants' use in commerce of designations which are confusingly similar to the SCREAM TOUR™ Trademark, despite having actual and constructive notice of Mauldin Brand's prior rights in and to the SCREAM TOUR™ Trademark, constitutes intentional conduct by Defendants to make false designations of origin and false descriptions about its goods and commercial activities.

81.     Defendants have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage, and injury to Mauldin Brand.

## COUNT II

## Common Law Trademark Infringement and Unfair Competition

## Under Georgia Law

82.    Mauldin Brand repeats and realleges the allegations in Paragraphs 1 through 81 as if fully set forth herein.

83.    Through Mauldin Brand's continuous and exclusive use of the SCREAM TOUR™ Trademark in commerce, the relevant trade and consuming public have come to understand the SCREAM TOUR™ Trademark as identifying Mauldin Brand and indicating the source of origin of the Mauldin Brand Services as coming from Mauldin Brand.

84.    Mauldin Brand has built a valuable business in its use of the SCREAM TOUR™ Trademark, and the goodwill associated with the SCREAM TOUR™ Trademark is of great value to Mauldin Brand. The SCREAM TOUR™ Trademark has come to indicate to the trade and the consuming public that the particular products and services bearing the SCREAM TOUR™ Trademark originate from Mauldin Brand.

85.    Mauldin Brand has exclusively used the SCREAM TOUR™ Trademark in commerce to market, sell, and distribute its products and services since at least 2001.

86.    Defendants have used, and are continuing to use, designations that are confusingly similar and/or virtually identical to the SCREAM TOUR™ Trademark

in interstate commerce and within the State of Georgia in connection with products and services identical or substantially similar to those offered under the SCREAM TOUR™ Trademark.

87.    Defendants' unauthorized use of the Infringing Marks are likely to cause confusion in the marketplace between the parties' respective products and services.

88.    Defendants' infringement of the SCREAM TOUR™ Trademark is in willful and wanton disregard of Mauldin Brand's common law rights in and to the same, and without the consent of Mauldin Brand.

**COUNT III**

**Unfair and Deceptive Trade Practices**

**Under Georgia Law (O.C.G.A. §10-1-372)**

89.    Mauldin Brand repeats and realleges the allegations in Paragraphs 1 through 88 as if fully set forth herein.

90.    Defendants' use of a word mark that is identical to and confusingly similar to SCREAM TOUR™ Trademark for similar goods and services is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' Infringing Good and Services.

91.    Defendants' adoption and use and/or intended use of the Infringing Marks and its attempt to register the Infringing Marks for the Infringing Goods and

Services was intentional and for the purpose of misleading the trade and the consuming public.

92.    As a result of Defendants' infringement, the trade and the consuming public are likely to be confused and deceived as to the source, sponsorship, affiliation or approval of the parties' respective goods.

93.    Mauldin Brand has been damaged by the aforementioned acts in an amount to be determined at trial.

94.    Defendants' adoption and use and/or intended adoption and use of the Infringing Marks and attempt to register them for the Infringing Goods and Services was undertaken by Defendant BPC intentionally, maliciously, and in bad faith.

95.    In addition, Defendants' conduct, if it continues, will result in irreparable harm to Mauldin Brand and, specifically, to the goodwill associated with the Mauldin Brand's SCREAM TOUR™ Trademark, unless such conduct is enjoined.

## COUNT IV

### Attorneys' Fees Under Georgia Law (O.C.G.A. §13-6-11)

96.    Mauldin Brand repeats and realleges the allegations in Paragraphs 1 through 95 as if fully set forth herein.

97.    Under Georgia law, a jury may allow an award of attorney's fees if the party seeking the award has specially pleaded such an award and the party from whom

attorney's fees are sought has acted in bad faith, been stubbornly litigious, or caused unnecessary trouble and expense. O.C.G.A. § 13-6-11.

98.    Defendants knew or should have known that Mauldin Brand owns the SCREAM TOUR™ Trademark and is using it in connection with Mauldin Brand Services in interstate commerce.

99.    Defendants knew or should have known that their use of the Infringing Marks in connection with its marketing and sale of the Infringing Goods and Services would be actually confusing or likely to confuse the consuming public as to the origin of its products and services.

100.   Accordingly, Defendants knew or should have known that their use of the Infringing Marks in the manner described would constitute infringement of the SCREAM TOUR™ Trademark in violation of the Lanham Act and Georgia law.

101.   Nevertheless, Defendants attempted to register the Infringing Marks with the USPTO and continue to market and sell products and services identical or nearly identical to Mauldin Brand's under the Infringing Marks.

102.   Mauldin Brand has been forced to hire legal counsel and incur substantial and unnecessary attorneys' fees and costs as a result of Defendants' bad faith and stubbornly litigious conduct set forth above.

103.   Thus, Mauldin Brand is entitled to an award of attorneys' fees under O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Mauldin Brand prays for relief against Defendants as follows:

A.     That Defendants and their agents, servants, employees, attorneys, successors, and assigns, and any and all persons acting in concert or participating with them, or any of their successors or assigns or any of them, be preliminarily and permanently enjoined and restrained from directly or indirectly:

(1)     Using the Infringing Marks, or any other reproduction, counterfeit, copy, confusingly similar variant, or colorable imitation of the SCREAM TOUR™ Trademark;

(2)     Making, distributing, advertising, marketing, offering for sale, or selling the Infringing Goods and Services;

(3)     Using the Infringing Marks, or any reproduction, counterfeit, copy, confusingly similar variant or colorable imitation of the same, in any manner likely to cause others to believe that Defendants' goods or services are connected with Mauldin Brand or are genuine Mauldin Brand-licensed products or services;

(4)     Committing any other acts that may cause the purchasing public to believe that Defendants' goods and services are genuinely licensed by Mauldin Brand or otherwise provided for the benefit of Mauldin Brand;

(5)    Shipping, delivering, holding for sale, importing, distributing, returning, transferring, or otherwise moving or disposing of any materials falsely bearing the Infringing Marks or any other reproduction, counterfeit, copy, confusingly similar variant or colorable imitation of the SCREAM TOUR™ Trademark; and

(6)    Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (1) through (5).

B.    That Defendants and any and all persons controlled by or acting in concert with some or all Defendants be required to deliver to Mauldin Brand for destruction all goods, packages, and any other written or printed materials, in tangible or intangible form, that bear or depict any of all of the Infringing Marks or any other reproduction, counterfeit, copy, confusingly similar variant or colorable imitation of the SCREAM TOUR™ Trademark.

C.    That Defendants be required to account for and pay to Mauldin Brand any profits from sales of the Infringing Goods and Services and any other product or services or sold under the Infringing Marks, and any such sum in addition thereto as the Court shall find just.

D.    That Defendants be ordered to expressly abandon any and all state and federal trademark applications seeking registration or having obtained registration

of a mark that includes in whole or in part the SCREAM TOUR™ Trademark, specifically including U.S. Trademark Application Nos. 98008232 and 98008192.

E.    That this case be found exceptional, and Mauldin Brand be awarded its attorneys' fees pursuant to 15 U.S.C. § 1117(a) and/or other applicable law.

F.    That Mauldin Brand recover the damages arising out of Defendants' wrongful acts in a sum equal to three times the actual damages suffered by Mauldin Brand, as provided in 15 U.S.C. § 1117(b) and/or other applicable law.

G.    That Defendants be required to disgorge their profits and other ill-gotten gains pursuant to 15 U.S.C. § 1117(a) and other applicable law.

H.    That Mauldin Brand have and recover the taxable costs of this civil action, including reasonable attorneys' fees, costs, and interest.

I.    That Mauldin Brand be awarded punitive or exemplary damages in view of Defendants' reckless, willful, wanton acts committed with conscious disregard for the rights of Mauldin Brand.

J.    That Mauldin Brand have such other general and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff Mauldin Brand, Inc. hereby demands a trial by jury as to all issues so triable.

Respectfully submitted this 21st day of September, 2023.

/Christopher J. Chan/
Georgia Bar No. 120498
*Attorney for Plaintiff Mauldin Brand Inc.*
**CHRISTOPHER J CHAN IP LAW, LLC**
848 Mentelle Drive NE; Suite 200
Atlanta, Georgia 30308-1612
Telephone: (404) 625-9599
IP@christopherjchan.com

**EXHIBIT A**



Michael Mauldin has continued to make an indelible mark on the music industry for more than 40 years. With an eye for talent and creative insight, Mauldin has been instrumental in discovering and shaping the careers of some of the most successful, talented artists and celebrities on the planet; Jermaine Dupri, Alicia Keys, Bow Wow, Destiny Child, The Fugees, Maxwell, Chante' Moore, Kenny Lattimore, Jagged Edge, Da Brat, Stan Genius and more.

As a living legend, Mauldin's career has always inspired excellence, evoked change and motivated decades of young artist, industry executives and the entertainment business at large. "By reaching our youth and community through art, culture, advocacy, education and leadership, we acknowledge the past and inspire the future - passing the baton and making way for the next generation of leaders"















# EXHIBIT B

PTO- 1478
Approved for use through 10/31/2024, OMB 0651-0009
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Trademark/Service Mark Application, Principal Register

**Serial Number: 98069522**
**Filing Date: 07/03/2023**

### The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 98069522 |
| **MARK INFORMATION** | |
| *MARK | SCREAM TOUR |
| STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | SCREAM TOUR |
| MARK STATEMENT | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| REGISTER | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Mauldin Brand, Inc. |
| *MAILING ADDRESS | 3334 Peachtree Street NE Suite 712 |
| *CITY | Atlanta |
| *STATE (Required for U.S. applicants) | Georgia |
| *COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| *ZIP/POSTAL CODE (Required for U.S. and certain international addresses) | 30326 |
| PHONE | 6786415533 |
| *EMAIL ADDRESS | XXXX |
| WEBSITE ADDRESS | screamtour.com |
| **LEGAL ENTITY INFORMATION** | |
| TYPE | limited liability company |
| STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY WHERE LEGALLY ORGANIZED | Georgia |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| INTERNATIONAL CLASS | 041 |
| *IDENTIFICATION | Educational and entertainment services, namely, providing speaking tours in the nature of live presentations by educational and motivational speakers; Entertainment services, namely, providing music tours in the nature of live musical performances; Entertainment services, namely, providing music theater tours in the nature of live musical theater performances |

| FILING BASIS | SECTION 1(a) |
|---|---|
| FIRST USE ANYWHERE DATE | At least as early as 02/01/2001 |
| FIRST USE IN COMMERCE DATE | At least as early as 02/01/2001 |
| SPECIMEN FILE NAME(S) | \\TICRS\EXPORT18\IMAGEOUT 18\980\695\98069522\xml1 \ APP0003.JPG |
| SPECIMEN DESCRIPTION | The specimen represents "SCREAM TOUR," the "mark" in all capital letters. Different tours may have a new design element using SCREAM and the corresponding TOUR. For example, "SOSO SUMMER 17 TOUR" |
| WEBPAGE URL | screamtour.com |
| WEBPAGE DATE OF ACCESS | 07/03/2023 |
| WEBPAGE URL | https://www.instagram.com/screamnationus/?hl=en |
| WEBPAGE DATE OF ACCESS | 07/03/2023 |
| **CORRESPONDENCE INFORMATION** | |
| NAME | Mauldin Brand, Inc. |
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | mtm@mauldinbrand.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | willkelli@mauldinbrand.com |
| **FEE INFORMATION** | |
| APPLICATION FILING OPTION | TEAS Standard |
| NUMBER OF CLASSES | 1 |
| APPLICATION FOR REGISTRATION PER CLASS | 350 |
| *TOTAL FEES DUE | 350 |
| *TOTAL FEES PAID | 350 |
| **SIGNATURE INFORMATION** | |
| SIGNATURE | /mm/ |
| SIGNATORY'S NAME | Michael Mauldin |
| SIGNATORY'S POSITION | CEO |
| SIGNATORY'S PHONE NUMBER | 678-641-5533 |
| DATE SIGNED | 07/03/2023 |
| SIGNATURE METHOD | Signed directly within the form |

PTO- 1478
Approved for use through 10/31/0024. OMB 0651-0009
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Trademark/Service Mark Application, Principal Register

Serial Number: 98069522
Filing Date: 07/03/2023

**To the Commissioner for Trademarks:**

**MARK:** SCREAM TOUR (Standard Characters, see mark)
The literal element of the mark consists of SCREAM TOUR. The mark consists of standard characters, without claim to any particular font style, size, or color.
The applicant, Mauldin Brand, Inc., a limited liability company legally organized under the laws of Georgia, having an address of

   3334 Peachtree Street NE Suite 712
   Atlanta, Georgia 30326
   United States
   6786415533(phone)
   XXXX

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

**For specific filing basis information for each item, you must view the display within the Input Table.**
International Class 041:  Educational and entertainment services, namely, providing speaking tours in the nature of live presentations by educational and motivational speakers; Entertainment services, namely, providing music tours in the nature of live musical performances; Entertainment services, namely, providing music theater tours in the nature of live musical theater performances

In International Class 041, the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 02/01/2001, and first used in commerce at least as early as 02/01/2001, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, consisting of a(n) The specimen represents "SCREAM TOUR," the "mark" in all capital letters. Different tours may have a new design element using SCREAM and the corresponding TOUR. For example, "SOSO SUMMER 17 TOUR".
Specimen File1
Webpage URL: screamtour.com
Webpage Date of Access: 07/03/2023
Webpage URL: https://www.instagram.com/screamnationus/?hl=en
Webpage Date of Access: 07/03/2023

For informational purposes only, applicant's website address is: screamtour.com
The applicant's current Correspondence Information:

   Mauldin Brand, Inc.
   PRIMARY EMAIL FOR CORRESPONDENCE: mtm@mauldinbrand.com
   SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): willkelli@mauldinbrand.com

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).
A fee payment in the amount of $350 has been submitted with the application, representing payment for 1 class(es).

### Declaration

☑ **Basis:**
   **If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

     • The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;

- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**
**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /mm/   Date: 07/03/2023
Signatory's Name: Michael Mauldin
Signatory's Position: CEO
Signatory's Phone Number: 678-641-5533
Signature method: Signed directly within the form
Payment Sale Number: 98069522
Payment Accounting Date: 07/03/2023

Serial Number: 98069522
Internet Transmission Date: Mon Jul 03 16:46:30 ET 2023
TEAS Stamp: USPTO/BAS-XXXX:XX:XXX:XXXX:XXXX:XXXX:XXX
X:XXXX-20230703164631847690-98069522-860
9175ba3aa54df3ee561a27b6b2ce9b4315cb2a27
5b05e11783fbea3ad8ac26-CC-46309318-2023
0703155715961892

# SCREAM TOUR



**EXHIBIT C**











As a kid star once himself, Bow Wow is excited to come back to the platform that solidified his career as one of the millennial generation's greatest entertainers.

"It's ya boy, Bow Wow, and you know I had to bring the scream tour back," Bow Wow exclaims.

Not only a partner but more than a decade later, Bow Wow is returning as a host for the upcoming tour. **The Scream Tour '23** allows the millennial generation to journey down memory lane, sharing their teenage years with their children and family and creating an unforgettable experience for fans of all ages.

"We are excited to partner with Bow Wow on the Scream Tour as he is the original face of the brand, and we have had the pleasure of working with him for many years on other tours we have produced. By introducing the Scream Tour '23 and featuring an incredible lineup of rising stars, we aim to create a one-of-a-kind experience for fans, allowing them to relive their teenage years while introducing the next generation to the magic of live music," states Gary Guidry, CEO, The Black Promoters Collective



The BPC Announces The Scream Tour '23 In Partnership With Bow Wow

In addition to the incredible lineup of artists, the **Scream Tour '23** will feature the dynamic sounds of **DJ Amira** & **Kayla** and **DJ Sophia Rocks**, ensuring that the energy remains high throughout the event.

Also co-hosted by the charismatic **Kayla Nicole**, the **Scream Tour '23** promises to be a spectacular event showcasing the industry's hottest talent. Fans can expect an electric atmosphere filled with non-stop entertainment and unforgettable performances.

Before general market sales begin, local and artist presale tickets will be available for select cities on Friday, July 7, at 10 AM local time. The promoter presale **code is BPC**, and the artist presale **code is SCREAM**; access tickets here. For select cities, tickets will be available to the general public on Monday, July 10, at 10 AM local time. Fans can access tickets here.

For more information and to purchase tickets, please visit bpctickets.com or follow the Black Promoters Collective @blackpromoterscollective.

For more information and to purchase tickets, please visit bpctickets.com or follow the Black Promoters Collective @blackpromoterscollective.

**Scream Tour '23 Dates with more to come:**

| | | |
|---|---|---|
| Friday, August 18 | Charlotte, NC | Bojangles Coliseum |
| Saturday, August 19 | Baltimore, MD | Chesapeake Employers Insurance Arena |
| Sunday, August 20 | Philadelphia, PA | Dell Music Center |
| Friday, August 25 | Chicago, IL | Wintrust Arena |
| Saturday, August 26 | Detroit, MI | Aretha Franklin Amphitheatre |
| Sunday, August 27 | Cleveland, OH | Jacobs Pavilion |
| Friday, September 1 | Savannah, GA | Enmarket Arena |
| Saturday, September 2 | Raleigh, NC | Koka Booth Amphitheatre |
| Sunday, September 3 | Atlanta, GA | Fox Theatre |
| Friday, September 8 | New York, NY | Hulu Theater at MSG |
| Saturday, September 9 | Washington/VA | Eagle Bank Arena |
| Sunday, September 10 | Hampton, VA | Hampton Coliseum |
| Friday, September 15 | St. Louis, MO | Chaifetz Arena |
| Saturday, September 16 | Southaven, TN | Landers Center |
| Thursday, September 21 | Dallas, TX | Texas Trust Credit Union Theater |
| Friday, September 22 | Jacksonville, FL | Vystar Veterans Memorial Arena |
| Saturday, September 23 | Miami, FL | Miramar Regional Park Amphitheater |
| Sunday, September 24 | Tampa, FL | Yuengling Center |
| Thursday, September 28 | Los Angeles, CA | Peacock Theater |
| Saturday, September 29 | Las Vegas, NV | The Theater at Virgin Hotels |
| Sunday, October 1 | Ontario, CA | Toyota Arena |
| Saturday, October 7 | Houston, TX | NRG Arena |
| Sunday, October 8 | New Orleans, LA | Lakefront Arena |

---

**ABOUT THE BLACK PROMOTERS COLLECTIVE**

The Black Promoters Collective (BPC) is a coalition of six of the nation's top independent concert promotion and event production companies. As a 100% Black-owned business, its mission is to be the world's leading producer and provider of culturally relevant live entertainment experiences. To learn more, visit **http://www.blackpromoterscollective.com**.

**For Press Inquiries on The Black Promoter's Collective, please contact:**
Tresa Sanders **tresa@tre-media.net**
Daylan Cole **daylan@tre-media.net**

SOURCE The Black Promoters Collective

---

**EXHIBIT D**







**EXHIBIT E**







